UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sao V.,

Petitioner,

v.

Markwayne Mullin, *Secretary, Department of Homeland Security*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

File No. 26-cv-2520 (ECT/JFD)

**OPINION AND ORDER**

Daniel P. Suitor, Daniel P. Suitor, PLLC, Minneapolis, MN, for Petitioner Sao V.

David W. Fuller and David R. Hackworthy, United States Attorney's Office, Minneapolis, MN, for Respondents Markwayne Mullin, Todd M. Lyons, and David Easterwood.

On May 6, 2026, Petitioner Sao V. filed a Petition for Writ of Habeas Corpus. Pet. [ECF No. 1]. He claimed that Respondents had subjected him to detention in violation of 8 U.S.C. § 1231, the Fifth Amendment's Due Process Clause, the Fourth Amendment guarantee against unreasonable searches and seizures, and the *Accardi* doctrine. Pet. ¶¶ 52–73. Respondents opposed the petition. ECF No. 7. In a May 28 Report and Recommendation, Magistrate Judge John F. Docherty recommended the petition be granted and Sao be released, though only on the *Accardi* and due process grounds. ECF No. 10 at 4–11. On June 10, I overruled Respondents' objections, adopted the Report and Recommendation on the *Accardi* ground, and did not reach the constitutional issue. ECF

No. 16 at 4–7. That order concluded that Immigrations and Customs Enforcement ("ICE") failed to comply with 8 C.F.R. § 241.13(i) because the agency did not show "changed circumstances" making it significantly likely that Sao would be removed in the reasonably foreseeable future; the agency failed to comply with the regulation's corresponding notice provisions; and it arrested Sao before revoking his release. ECF No. 16 at 4. Over Respondents' objection, I ordered Sao's release. *Id.* at 7–9.

On July 8, 2026, Sao filed a Motion for Attorney's Fees and Costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. ECF No. 18; ECF No. 20 at 1. EAJA provides that

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Fees include "reasonable attorney fees" of not more than "$125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C § 2412(d)(2)(A). A party with a net worth exceeding $2,000,000 at the time the civil action was filed may not recover EAJA fees. *See* 28 U.S.C. § 2412(d)(2)(B). The "position of the United States" includes not only its legal position but also "the action or failure to act by the agency upon which the civil action is based."

28 U.S.C. § 2412(d)(2)(D). There is no dispute that Sao prevailed, as he was "the party ultimately prevailing when the matter [was] finally set at rest." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (citation modified).

Respondents oppose the motion on the grounds (1) that habeas petitions challenging immigration detention are not civil actions under EAJA, meaning the Government has not waived its sovereign immunity in that respect; (2) that Respondents' position was substantially justified; and (3) that the requested fees are unjustified and unreasonable. *See* ECF No. 29. These reasons are not convincing, so the motion will be granted.

Respondents first argue that EAJA does not waive the Government's sovereign immunity with respect to habeas actions challenging immigration detention. *Id.* at 1–8. There is a circuit split on this issue. *See Hernandez v. Mullin*, --- F. Supp. 3d ---, No. 6:26-CV-03043, 2026 WL 1584799, at *2 (W.D. Mo. June 2, 2026) (explaining background). The U.S. Supreme Court recently granted a petition for writ of certiorari to resolve the question. *See Montoya Palacios v. Liggins*, --- S. Ct. ---, No. 25-1223, 2026 WL 1855057 (U.S. June 29, 2026) (Mem.). Though the Eighth Circuit hasn't expressly held one way or the other, its case law strongly suggests that habeas petitions challenging immigration detentions are civil actions under § 2412(d)(1)(A). In *Bah v. Cangemi*, the court affirmed a denial of attorneys' fees because the Government's position was substantially justified. 548 F.3d 680, 684–85 (8th Cir. 2008). It proceeded on the unchallenged assumption that habeas petitions attacking civil immigration detention fall with § 2412(d)(1)(A)'s scope. *Id.* at 682–83, 685 (determining that "[t]he civil action in which Bah had prevailed was his petition for a writ of habeas corpus" challenging his

detention while the Government sought travel documents to remove him). The most faithful application of the Eighth Circuit's precedent is to find that Sao's habeas petition is a civil action under the meaning of § 2412(d)(1)(A).

Turn next to substantial justification. "Substantially justified means 'justified to a degree that could satisfy a reasonable person.'" *Bah v. Cangemi*, 548 F.3d at 683 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "A substantially justified position need not be correct so long as 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Id.* at 683–84 (quoting *Pierce*, 487 U.S. at 566 n.2). "The government may also be justified in litigating a legal question that is unsettled in this circuit." *Id.* at 684. "In determining whether the government's position is 'substantially justified,' the district court should make 'only one threshold determination for the entire civil action.'" *United States v. Hurt*, 676 F.3d 649, 652 (quoting *Comm'r v. Jean*, 496 U.S. 154, 159 (1990)). The Government has the burden of showing its position was substantially justified. *Id.*

Sao argues that Respondents' position was not substantially justified in several ways. As to its legal justification, Sao contends that (1) the *Accardi* doctrine has been applied to re-detention of individuals released on orders of supervision, and (2) that § 241.13(i) requires ICE to make more than conclusory assertions about changed circumstances in order to justify detention. ECF No. 20 at 6–8. As to the basis in fact, Sao believes that (3) there was no substantial justification for Respondents' "fail[ure] to produce facts sufficient to even suggest its revocation of [his] release was reasonable,"

noting that Respondents requested travel documents fifteen days after Sao's detention. *Id.* at 9.

Respondents argue that their position on an entirely separate issue was substantially justified—that the *Accardi* doctrine should not be applied "to areas outside of administrative law," and even if it does apply to immigration habeas petitions, procedural violations do not justify a petitioner's release. ECF No. 29 at 11–13. As Respondents see it, they had "a duty to contest novel legal theories implicating [immigration detention] power," *id.* at 11, so their position on "such an open area of law" was substantially justified, *id.* at 13 (quoting *Bah*, 548 F.3d at 684).

This is unpersuasive because it was not the position Respondents took in litigation, and it ignores the factual basis for Sao's detention. As to the § 241.13(i) claim, Respondents' initial position was that Sao was properly detained pursuant to federal regulations. ECF No. 7 at 8–9. Judge Docherty rejected that argument. ECF No. 10 at 8–10. Respondents objected, ECF No. 13 at 3–4, and that objection was overruled, ECF No. 16 at 2–7. While courts should not treat a case as "atomized line-items," *Jean*, 496 U.S. at 162, this issue was a major focus of the Report and Recommendation and the Order adopting it. Respondents do not now argue that their § 241.13(i) position and procedural conduct was substantially justified; they argue that *Accardi* does not apply in this context. That is a new argument, and it does not show that the previous litigation position or prelitigation conduct was substantially justified. *See Bah*, 548 F.3d at 684.

Lastly, Respondents object that the requested fees are unreasonable. They first contend that Sao has not met his burden to establish he is net worth did not exceed

$2,000,000 at the time the action was filed. ECF No. 29 at 14–15; *see Huett v. Bowen*, 873 F.2d 1153, 1155 (8th Cir. 1989) (per curiam) (requiring the party to establishing that they were the prevailing party under the meaning of the statute); *Elbert v. USDA*, No. 18-cv-1574 (JRT/TNL), 2023 WL 4704450, at *3 (D. Minn. July 24, 2023) ("The party requesting EAJA fees bears the burden of establishing eligibility for the award.").

Sao has met that burden. He filed an affidavit testifying that he is "a private individual" whose "net worth does not exceed, nor has it ever exceeded, the amount of $2,000,000." ECF No. 21 ¶ 2. At least one court in this District has found similar testimony to be sufficient. *See C.M. v. Mullin*, No. 26-cv-380 (DWF/SGE), 2026 WL 1506172, at *1 (D. Minn. May 29, 2026). He did not submit additional verification, nor did he need to. As another court persuasively explained,

> While it is clear that the statute places the burden of establishing eligibility on the applicant, it would impose unnecessarily burdensome restrictions on recovery to require an applicant to prove, to the government's satisfaction and in its initial application for fees and costs under the EAJA, that the applicant met all of the eligibility requirements. Often, when a party applies for fees under the EAJA, there is no serious question as to eligibility under § 2412(d)(1)(B). Accordingly, there is often no argument by the government that the applicant is not eligible, and, in such cases, other courts have accepted as sufficient proof an applicant's affidavit of net worth, and even an affiant corporation's assertion that it meets the net worth and maximum employee eligibility requirements. In the vast majority of cases, in which such eligibility is not questioned, it would require a significant amount of effort to be expended unnecessarily to require a showing as suggested by the Regional Director. In this court's view, an applicant's affidavit which indicates eligibility should be sufficient to meet the applicant's burden, absent some at least minimally factually supported argument by the government that the applicant is not eligible.

*D'Amico ex rel. NLRB v. Indus. Union of Marine & Shipbuilding Workers of Am.*, 630 F. Supp. 919, 922 (D. Md. 1986) (citation modified).

Some cases take an opposing view, but they do not convince me that Sao had to do more to establish eligibility for an EAJA award. In *Fields v. United States*, for instance, the Court of Federal Claims rejected *D'Amico*'s reasoning, but it and other cases have focused on the more rigorous business eligibility requirements. *See* 29 Fed. Cl. 376, 382–83 (Fed. Cl. 1993), *aff'd*, 64 F.3d 676 (Fed. Cir. 1995) (unpublished table opinion). In *Mantle Ranches, Inc. v. U.S. Park Service*, the court denied EAJA fees to a corporate ranch whose attorney attested that the company's net worth was $275,000, below the threshold for businesses, which is $7,000,000. 993 F. Supp. 1335, 1336–37 (D. Colo. 1998). The Government responded by submitting evidence that the company's net worth was more than $7.4 million, attaching as support a letter from an agricultural realtor estimating the ranch's low value at $5 million and the high value at $7,440,00, as well as a sales brochures offering to sell the ranch for $6 million. *Id.* at 1337. The court ordered the plaintiffs to reply, "thus giving them the opportunity to bolster their assertion concerning their net worth," but they provided no financial documentation. *Id.* Under those circumstances, the plaintiffs did not establish they were eligible for an EAJA reward, so their fee motion was denied. *Id.* at 1338. And in *United States v. Harper*, the court found the conclusory assertion that the plaintiff was a "party" did not show he met the $2 million threshold, and it denied the motion without prejudice "to request reconsideration, provided that said request is accompanied by a statement that Harper is willing to litigate fully the issue

whether he is a party." 569 F. Supp. 602, 604 (E.D. Pa. 1983). These cases are not binding precedent, and I find that they are most persuasive to the extent they impose more rigorous documentation requirements on corporate and other business entities, not individuals.

Respondents have not made a "minimally factually supported argument" that Sao's declaration testimony is incorrect. *D'Amico ex rel. NLRB*, 630 F. Supp. at 922. Nothing in this record suggests Sao has more than $2,000,000 in net worth. He is a refugee whose family fled persecution in Laos and lived for ten years in a Thai refugee camp. Pet. ¶ 1. His counsel represented him pro bono. ECF No. 21 ¶ 3. If Respondents had made such a factually-grounded argument, their own case law suggests the better course would be to invite Sao to reply with more documentation of his assets and liabilities. *See Mantle Ranches*, 993 F. Supp. at 1337; *Harper*, 569 F. Supp. at 604.

I will award Sao's counsel his requested $500 hourly rate. ECF No. 2 at 13–16. The EAJA caps the statutory hourly rate at $125, but it allows exceptions where "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Courts in this District have found that a $500 hourly fee was merited for successfully litigating habeas petitions over immigration detention during the period of increased immigration enforcement efforts in Minnesota. *See Anoulack N. v. Mullin*, No. 26-cv-1820 (NEB/DJF), slip op. at 2–3 (D. Minn. June 2, 2026) ("The Court concludes that special factors warrant a higher fee here because the government's actions strained the immigration bar and limited the availability of attorneys able to assist petitioners like Anoulack N."). Counsel has attested to his skill and experience in general

and in immigration litigation particularly, ECF No. 22 ¶¶ 12–21, and other courts in this District have credited that testimony, *see, e.g.*, *Yeng X. v. Noem*, No. 26-cv-1399 (JMG/ECW), slip op. at 2 (D. Minn. Apr. 3, 2026) ("$500 per hour is reasonable in the Minneapolis market, given the petitioner's counsel's skill and experience."). Counsel spent a reasonable 10.1 hours on this case and made appropriate reductions for drafting unsuccessful arguments and engaging in duplicative or personal conversation with his client. ECF No. 22-1 at 1. He is entitled to fees of $5,050.00 ($500/hour × 10.1 hours) and his filing costs of $5.00, for a total award of $5,055.00.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Petitioner's Motion for Attorney's Fees and Costs [ECF No. 18] is **GRANTED**.

2. Respondents must pay $5,050.00 in attorney's fees and $5.00 in costs, totaling $5,055.00, to counsel for Petitioner within 30 days.

Dated: August 10, 2026

s/Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court